## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION

No. 7:14-CV-251-D

| | |
|---|---|
| JAMES ROBERT EZZELL, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings

[DE-26, -31] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant James Robert

Ezzell ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial

review of the denial of his applications for a period of disability, Disability Insurance Benefits

("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs

has expired and the pending motions are ripe for adjudication. Having carefully reviewed the

administrative record and the motions and memoranda submitted by the parties, it is recommended

that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment

on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for DIB and SSI payments on June 23, 2008 and July

1, 2008, respectively, alleging disability beginning June 19, 2008. (R. 13, 259-67). Both claims

were denied initially and upon reconsideration. (R. 137-40). A hearing before Administrative Law

Judge ("ALJ") Barry Peffley was held on March 4, 2010, at which Claimant, represented by counsel,

and a vocational expert ("VE") appeared and testified. (R. 77-94). On March 9, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 141-57). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 226), and the Appeals Council granted review and remanded the case for further proceedings. (R. 159-62). On November 29, 2012, ALJ Diana Myrick held a new hearing at which Claimant, represented by counsel, and a VE appeared and testified. (R. 34-63). On March 22, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 10-33). The Appeals Council denied Claimant's request for review on August 26, 2014 (R. 1-5), and Claimant filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270

2

F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision

3

pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred in (1) failing to perform a function-by-function analysis when assessing Claimant's residual functional capacity ("RFC"); and (2) evaluating the medical opinion evidence. Pl.'s Mem. [DE-27] at 12-17.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant has not engaged in substantial gainful activity since the alleged onset date. (R. 15). Next, the ALJ determined Claimant has the following severe impairments: residual symptoms of fractures to the pelvis, ribs, right tibial plateau, and left foot, residual symptoms of trauma to the left knee, small vessel disease in both feet, peripheral neuropathy, and depression. (R. 16). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17-20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in his activities of daily living and social functioning and moderate difficulties in concentration, persistence and pace with no episodes of decompensation of an extended duration. (R. 19).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to lift and carry 20 pounds occasionally and 10 pounds frequently with the following specific limitations: sit for up to six hours and stand or walk for up to two hours provided that he is allowed

4

use a hand-held assistive device to walk to and from his workstation and to alternate sitting and standing while at his workstation every hour for five minutes at a time in order to relieve pain or discomfort; never use ladders, ropes or scaffolds, and is limited to only occasional balancing, stooping, kneeling, crouching, crawling, and use of ramps and stairs; avoid concentrated exposure to hazardous conditions, such as unprotected heights and dangerous machinery; and understand, remember, and carry out short, simple instructions two hours at a time for eight hours per day while performing non-production rate work.[1]  (R. 20-24). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible.  (R. 21-22). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a farm worker. (R. 24). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 25-26).

## B.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing he was 47 years old and living with his wife.

---

[1] The ALJ's RFC included an ability to lift and carry consistent with light work, but a limitation on walking and standing consistent with sedentary work.  (R. 20). Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

5

(R. 38-40). He has no income, other than from his wife's employment, and does not receive Medicaid. (R. 41).

Claimant has been unable to work since he was injured in an automobile accident in 2008 for which he was hospitalized. (R. 39, 42). His pelvis was surgically repaired with bolts, but he continues to experience pain in his lower back and pelvic area near his tail bone when sitting or standing for more than 15–20 minutes. (R. 42-43, 51). Claimant's left hip was crushed in the accident, for which he underwent corrective surgery. (R. 43). He continues to experience numbness from nerve damage, burning, and tingling in his left hip and numbness and swelling extending from his hip to his leg and foot. (R. 43-44). Claimant's left knee was injured when it impacted the dashboard in the accident, and he has been told it cannot be repaired. *Id.* His knee joint pops in and out several times a day, mostly when transitioning between sitting and standing, which is painful and can cause him to fall if he is not careful. (R. 44). Claimant has "drop foot" in his left foot and cannot lift his left foot when he walks, which caused him to fall and break his right knee. (R. 45-46). He also has poor circulation, and when it is cold his feet and ankles turn dark and he experiences chest pain from where he broke his sternum in the accident. (R. 45-46). Turning his head to the left also causes chest pains, which the doctors have been unable to explain. (R. 47). Claimant takes medication for his heart (although he confirmed his heart had been checked and no problem was found) and circulation, but the medicine does not work and he has been told there is no alternative. (R. 46-47). Claimant has high blood pressure for which he takes medication, and he experiences headaches approximately twice a week when his blood pressure is elevated. (R. 48). He does not sleep well due to pain. *Id.* Claimant's medications cause no side effects other than blurry vision. (R. 51).

6

Claimant has been treated by his primary care physician for depression, which started not long after his accident, and he had been taking medication to treat his depression for three years. (R. 48-49). He also has difficulty remembering things. (R. 40, 49). Claimant experiences blurry vision and cannot see well up close, but reading glasses correct the problem. (R. 49-50).

Claimant lives in a single-wide trailer with five steps going up to the front door. (R. 41). Claimant has a driver's license and drives about 10 miles twice a week to visit his mother-in-law, but his wife drove him the approximately 25 miles to the hearing. (R. 39, 52). Claimant's wife works, so he is home alone throughout the day. (R. 41). He mostly watches television and does not do much else. *Id.* Claimant can comfortably lift a gallon of milk, walk from the hearing room to his car in the parking lot, walk the length of his home five or six times a day, and can move about to take care of himself and things throughout the home. (R. 50-51). Claimant can bathe and dress himself although he has difficulty putting on his pants at times. (R. 51). Since his accident Claimant has been using a cane prescribed by his doctor because he has difficulty with balance and is afraid he will fall. *Id.* Claimant uses the cane at all times, even in his home, and had it at the hearing. (R. 51-52). Claimant does not smoke and drinks three to four beers a week. (R. 52). He does not attend church, is not involved in any organizations, and has no hobbies. *Id.*

## C.    Vocational Expert's Testimony at the Administrative Hearing

Edith Edwards testified as a VE at the administrative hearing. (R. 54-62). After the VE's testimony regarding Claimant's past work experience, the ALJ asked the VE to assume a hypothetical individual of the same age, education[2] and prior work experience as Claimant who can

---

[2] The VE and the ALJ believed Claimant had completed the 11th grade, as indicated on Claimant's Disability Report form. (R. 58, 306). However, when the VE sought to confirm Claimant's educational background the Claimant stated he had not completed the 9th grade. (R. 58). The VE opined that in either case Claimant was considered to have a

7

lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk with normal breaks for at least two hours in an eight hour workday, sit with normal breaks for six hours in an eight hour workday, occasionally perform postural except activities but no climbing ladders and ropes, avoid concentrated exposure to working around unprotected heights and moving machinery, and can understand, remember, and carry out short, simple instructions for two hours at a time in an eight hour day in a non-production rate oriented job. (R. 54-57). The VE indicated the hypothetical individual could not perform Claimant's past work and that available jobs at the light level would be limited, but such an individual could perform the job of cashier, Dictionary of Occupational Titles ("DOT") number 211.462-010, light, unskilled, with an SVP of 2. (R. 58-59). The VE confirmed that the job accounted for the limitation to standing and walking for two hours in an eight hour workday, but indicated that the number of jobs was drastically reduced (1,500 in North Carolina and 46,750 nationally) due to that limitation. *Id.* The VE also identified the following jobs at the sedentary level: order clerk, DOT code 209.567-014, unskilled, with an SVP of 2, and 3,400 jobs in North Carolina and 106,000 nationally; cashier at the sedentary level, DOT code 211.462-026, low-level semi-skilled with an SVP of 3, but with an SVP of 2 at the unskilled level there are 3,000 jobs in North Carolina and 93,750 nationally. (R. 59). The ALJ next added the limitation of requiring a cane to ambulate to and from the workstation. *Id.* The VE opined that light-level work would be precluded completely, but the individual could perform the sedentary jobs noted. (R. 60). The ALJ then added the further limitation of needing to alternate sitting and standing once an hour for five minutes, and the VE opined this would reduce the available jobs by half. *Id.* The VE gave the same response to altering the limitation to alternate sitting and standing once every 30 minutes

---

limited education. *Id.*

8

for five minutes. (R. 61). The VE indicated there would be no work for an individual off task more than ten percent of the day due to medical issues or for an individual requiring rest breaks in addition to those offered by competitive employment. (R. 61-62). The VE indicated her testimony was consistent with the DOT except with respect to the availability of the sedentary cashier job at the unskilled level with an SVP of 2, which was based on the VE's professional knowledge from placing numerous workers in such a position. (R. 59, 62). The VE clarified that the use of a cane and alternating positions is not inconsistent with the DOT, but rather is not addressed by the DOT and so her testimony in this regard was based on her professional judgment. *Id.*

## V. DISCUSSION

### A.  The ALJ's RFC Analysis

Claimant contends the ALJ erred when assessing Claimant's RFC by (1) failing to perform a function-by-function analysis, specifically with respect to Claimant's ability to walk, in violation of S.S.R. 96-8p and the Fourth Circuit's ruling in *Mascio v. Colvin*, 780 F. 3d 636 (4th Cir. 2015); (2) improperly evaluating medical opinion evidence; and (3) providing insufficient reasons for discounting Claimant's credibility. Pl.'s Mem. [DE-27] at 12-17. Defendant in response contends the ALJ applied the correct legal standards and the decision is supported by substantial evidence in the record. Def.'s Mem. [DE-32] at 7-16.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL

9

374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

In *Mascio*, the Fourth Circuit explained that S.S.R. 96-8p requires the ALJ to "'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." 780 F.3d at 636 (quoting S.S.R. 96-8p). The Ruling further requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). At issue here is the ALJ's determination that Claimant can "stand or walk for up to two hours provided that he is allowed [to] use a hand-held assistive device to walk to and from his workstation[.]" (R. 20). In making this determination, the ALJ did not perform the function-by-function assessment set forth in S.S.R. 96-8p with respect to Claimant's ability to walk. (R. 20-24); S.S.R. 96-8p, 1996 WL 374184, at *1 (work-related abilities must be assessed "on a function-by-function basis, including

10

the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945"); 20 C.F.R. §§ 404.1545(b) and 416.945(b) (listing physical abilities, including walking, that if limited may reduce a claimant's ability to do work). However, in *Mascio* the Fourth Circuit rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Id.* (citation omitted). Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

In assessing Claimant's RFC, the ALJ discussed the medical opinion evidence and Claimant's testimony, which she found was not "sufficiently credible" to support a finding of disability. (R. 21-24). While the ALJ did not address Claimant's medical records in the narrative portion of the RFC determination, at step two the ALJ discussed these records in detail, which informs the ALJ's RFC assessment. (R. 16-17); *see Harley v. Colvin*, No. 5:14-CV-853-D, 2015 WL 9699531, at *10 (E.D.N.C. Dec. 2, 2015) (unpublished) (concluding the relevance of findings in the ALJ's decision was negated because they appeared at a different step of the sequential evaluation where "the ALJ's decision must be read as a whole") (citation omitted), *adopted by* 2016 WL 126372 (Jan. 11, 2016).

The ALJ first summarized Claimant's testimony at the administrative hearing, including that he experiences numbness, burning and tingling in his left leg and hip due to nerve damage, his knee is unstable, he has poor circulation in his feet, his left foot drops and causes him to trip, he uses a prescribed cane for balance when he stands and walks, he can walk from the hearing room to the parking lot, and can stand for 20 minutes before experiencing back pain and swelling in his legs.

11

(R. 21). The ALJ then found that although Claimant had received treatment for his alleged symptoms, it "has been essentially routine and/or conservative in nature, and has been generally successful in controlling those symptoms." (R. 21-22). The ALJ also noted that "his original fractures have healed, and while he still experiences problems with his right knee, this condition is still treated conservatively. There is no indication in the record that his medications are ineffective." (R. 22). As noted above, although the ALJ does not point to specific medical evidence in support of this conclusion in the RFC portion of the decision, the treatment records discussed by the ALJ at step two provide substantial evidence in support of the RFC determination.

The ALJ noted Claimant's surgery following his June 19, 2008 accident was successful, that he was weight bearing as tolerated in September 2008, but that he would be out of work for another six to eight weeks, and by February 2009 Claimant's surgeon reported he was "doing pretty well and getting around at home with minimal difficulty." (R. 16, 511-12, 571). The ALJ acknowledged that in May 2009 Claimant had marked instability in his left knee that interfered with his ability to walk and was referred to Dr. Claude Moorman, an orthopedic specialist, who evaluated Claimant's knee on August 28, 2009. (R. 16, 615, 618-19). Dr. Moorman noted Claimant's complaint was not of pain but instability that limits Claimant to light activity and diagnosed a ligament tear and valgus ankle secondary to nerve dysfunction (R. 16, 618-19). The ALJ cited an MRI study after which Dr. Moorman on October 20, 2009 expanded Claimant's diagnosis to include tears of Claimant's ACL and medial meniscus and recommended Claimant try using a custom brace before considering a multi-ligament knee reconstruction. (R. 16, 621-22). Dr. Moorman's treatment note indicated Claimant would return in eight weeks (R. 622), however there are no further treatment notes with Dr. Moorman in the record.

12

The ALJ discussed Claimant's treatment for his left foot drop and burning pain with Dr. Mark Easley, who examined Claimant on November 10, 2009, and diagnosed neuropathic changes secondary to neurologic injury and referred Claimant for an EMG/NCV. (R. 16, 624-26). Dr. Easley also noted Claimant had been recently fit for an Arizona brace for his left foot, that the burning sensation had gotten substantially better since Claimant's initial postoperative course but is still present, and that Claimant had a decreased sensibility in the left foot that also seemed to be improving very slowly. (R. 624). Although Dr. Easley noted that Claimant would return after the EMG study (R. 625), there are no further treatment notes with Dr. Easley in the record.

The ALJ also noted that on February 4, 2010, Claimant's surgeon Dr. Olson reported no functional impairment in Claimant's hip or pelvis, but limitation due to pain and numbness in Claimant's feet. (R. 16, 667). The ALJ considered Claimant's treatment with Dr. Ravish Sachar, a cardiovascular specialist, beginning February 10, 2010 for peripheral vascular disease and bilateral foot numbness. (R. 16, 702-04). At the initial consultation, Dr. Sachar noted Claimant does not have pain with ambulation, does have left foot neuropathy on the plantar surface, does not have ulceration, and can ambulate but has a stiff left ankle due to his peripheral injuries. (R. 702). Dr. Sachar ordered objective testing, including a treadmill stress test, and Claimant was counseled regarding his diet and regular, sustained exercise for at least 30 minutes three to four times per week. (R. 704). The ALJ noted that on April 29, 2010, Dr. Sachar indicated Claimant's symptoms had improved with medication and directed Claimant to follow up in one year. (R. 16, 765). The ALJ also considered Claimant's further treatment with Dr. Sachar: on February 10, 2011, Claimant presented with continued leg pain and discoloration of his toes and was referred for more testing; on January 26, 2012, Dr. Sachar indicated Claimant's PVD work-up was consistent with small vessel

13

disease in both feet, Claimant reported he could walk to the parking deck and then his feet would burn and his hip would hurt, and Claimant was referred for neurological complaints; on October 24, 2012, Claimant reported feeling generally well except for pain in his legs and chest in cold weather with no other major complaints, and was instructed to continue his medications and follow-up in one year. (R. 16-17, 756-58, 762-64, 827-29).

The ALJ considered Claimant's right knee fracture from falling down steps in May 2010, but noted by the end of July 2010 Claimant was full-weight bearing without the use of a brace. (R. 17, 738-39). Dr. Huff advised Claimant to resume normal activity as tolerated and that his condition should only improve. (R. 738). Although Claimant saw Dr. Huff again in October 2010 for increased right-leg pain (R. 813), a follow-up ultrasound was negative and Claimant was advised that he had a muscle herniation that is normal for his previous surgical repair and he should use rest, ice, and elevation (R. 818). There are no further treatment records with Dr. Huff in the record. Finally, the ALJ noted that Dr. Howerton, Claimant's treating physician, indicated Claimant had normal gait on September 26, 2012. (R. 16, 821). Dr. Howerton also noted that Claimant had a normal gait on March 16, 2011, May 17, 2011, August 17, 2011, September 2, 2011, and April 12, 2012, and there are no indications from these treatment notes that Claimant was using a cane or having difficulty ambulating. (R. 777, 780, 782, 785, 788).

The ALJ imposed a highly restrictive RFC limiting Claimant's standing and walking to up to two hours in an eight-hour workday provided that he is allowed use a hand-held assistive device to walk to and from his workstation. (R. 20). Claimant's treatment notes, considered and discussed by the ALJ, indicate that while Claimant had difficulty ambulating and utilized a cane for a period of time after his accident and again after breaking his right knee, Claimant's ability to ambulate

14

improved and he was treated conservatively with medication for his neuropathy and small vessel disease, which did not impact his ability to ambulate to a greater extent than provided for in the RFC.

### i. *Medical Opinions*

The ALJ also considered the medical opinion evidence in the RFC determination, and Claimant takes issue with the ALJ's consideration of Dr. Moorman's and Dr. Cohen's opinions. Pl.'s Mem. [DE-27] at 14-17. Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking

15

into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

Dr. Moorman completed a one-page medical source statement on December 7, 2009, indicating Claimant could work no hours a day, could not stand for any length of time, and could lift no weight. (R. 629). The ALJ rejected Dr. Moorman's opinion, explaining it was inconsistent with not only his own treatment notes, but also the treatment notes of Claimant's other treatment providers. (R. 23). The ALJ considered that Dr. Moorman was an orthopedic specialist who had examined Claimant, but that he only saw Claimant twice before offering his opinion. *Id.* The ALJ noted that while Claimant's knee impairments were significant, Dr. Moorman recommended first trying a knee brace to see if it would improve Claimant's condition and to follow-up in eight weeks. (R. 23, 622). There is no evidence in the record that Claimant returned to Dr. Moorman to pursue additional treatment. Furthermore, as detailed above, the treatment notes indicate that while Claimant's knee and other lower extremity impairments significantly affected his ability to ambulate at the time he saw Dr. Moorman, Claimant's condition thereafter improved as evidenced by the conservative treatment he received, his treating physician's regular notations that his gait was

16

normal, and the lack of indication he continued to have difficulty ambulating or using a cane. *See, e.g.*, (R. 702, 704, 738, 765, 756-58, 762-64, 777, 780, 782, 785, 788, 813, 818, 821, 827-29). The ALJ considered each of the appropriate factors set forth in 20 C.F.R. §§ 404.1527 and 416.927 in evaluating Dr. Moorman's opinion, and substantial evidence supports the ALJ's decision that the opinion did not warrant significant weight.

Dr. Cohen conducted a consultative examination of Claimant on May 8, 2009 and made the following relevant findings: on examination Claimant could sit, stand and ambulate; had an antalgic left leg gait, normal station, and no range of motion of the left ankle; required an assistive device and was unable to safely ambulate without one; and his left knee was unstable to traction in all directions. (R. 587). Dr. Cohen made the relevant diagnoses of torn ligaments in the left knee with a prognosis of "[n]eeds orthopedic attention" and left foot drop with a prognosis of "[m]ay need brace." *Id.* Dr. Cohen further concluded,

> The claimant uses a simple cane for walking and standing. This device is needed for long walks. The device was prescribed by [an] Orthopedist on or around 2008. The claimant is unable to walk a block at a reasonable pace on a rough/uneven surface. The claimant is unable to climb a few steps at a reasonable pace with the use of a single handrail. The claimant does have full use of the other upper extremity for carrying objects.

> The claimant's ability to handle objects, hear, speak, travel, and stamina is not impaired. The claimant's ability to sit is moderately impaired. The claimant's ability to stand is moderately impaired. The claimant's ability to move about is severely impaired. The claimant's ability to lift is moderately impaired. The claimant's ability to carry is moderately impaired.

(R. 587-88). The ALJ considered Dr. Cohen's opinion in formulating the RFC and gave it significant weight, finding that the suggested limitations are "consistent with the clinical record and accurately describe the functional impact of the medically determinable impairments upon the

17

claimant." (R. 22-23). Claimant argues that Dr. Cohen's opinion is not consistent with the ALJ's conclusion that Claimant can stand or walk for up to two hours in an eight-hour workday with the use of a cane to ambulate to and from his workstation, but rather indicates that Claimant is incapable of effective ambulation, pointing to Dr. Cohen's findings not recited by the ALJ that Claimant "is unable to walk a block at a reasonable pace on a rough/uneven surface" and "unable to climb a few steps at a reasonable pace with the use of a single handrail." (R. 22-23, 587); Pl.'s Mem. [DE-27] at 14-17. Claimant contends this error resulted in erroneous findings at step three regarding his ability to ambulate effectively and whether he met one of the Listing 1.00 disorders related to the musculoskeletal system. *Id.* at 15-16.

"Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities," and examples of ineffective ambulation are "the inability to walk without the use of a walker, [or] two crutches or two canes." 20 C.F.R. pt. 404, subpt. P, app. I, § 1.00(B)(2)(b)(1), (2). As Defendant points out, Dr. Cohen indicated Claimant could ambulate with a cane and has full use of the other upper extremity for carrying objects, which would fall outside the definition of ineffective ambulation. (R. 587); Def.'s Mem. [DE-32] at 11-12; *McAuley v. Colvin*, No. 7:12-CV-311-D, 2013 WL 7098724, at *9 (E.D.N.C. Dec. 13, 2013) (unpublished) ("As Defendant correctly observes, an inability to ambulate effectively means an inability to ambulate without the use of a device that requires *both* upper extremities" and "use of a cane does not bring [the claimant] within the ambit of 1.04(C).") (emphasis in the original) (citing 20 C.F.R. Part 404, subpart P, App. I, § 1.00(B)(2)(b)(2)). However, other examples of ineffective ambulation include "the inability to walk a block at a

18

reasonable pace on rough or uneven surfaces" and "the inability to climb a few steps at a reasonable pace with the use of a single hand rail," 20 C.F.R. Part 404, subpart P, App. I, § 1.00(B)(2)(b)(2), both findings also made by Dr. Cohen (R. 587). *See Fleming v. Barnhart*, 284 F. Supp. 2d 256, 268 (D. Md. 2003) (noting "'if [a claimant] who uses [only] one cane or one crutch *is otherwise unable to effectively ambulate*, the impairment(s) might still meet or equal a listing'") (emphasis added) (quoting Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58,010, 58, 013 (Nov. 19, 2001) ("[W]e do not consider required use of one cane or crutch to automatically exclude all gainful activity. However, if someone who uses one cane or crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or equal a listing.")).

Claimant specifically takes issue with (1) the ALJ's finding that Claimant did not meet Listing 1.06, Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones, because Claimant's hip bone healed and he failed to show ineffective ambulation; and (2) the ALJ's failure to consider Listing 1.03, Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset. Pl.'s Mem. [DE-27] at 15-16. However, Claimant fails to carry his burden of fully addressing each element of either of these listings. "Plaintiffs bear the burden of proving their condition meets a listing and, accordingly, the responsibility of producing evidence to sustain their claims." *Rowe v. Astrue*, No. 5:07-CV-478-BO, 2008 WL 4772199, at *1 (E.D.N.C. Oct. 28, 2008) (unpublished) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Thus, where a claimant "fails to articulate why h[is] medical impairments do, in fact, meet all of the elements of a given listed impairment," he fails to meet his burden. *Id.* (citing *Sullivan v. Zelby*, 493

19

U.S. 521, 530 (1990)). Here, Claimant addressed the ambulation criteria but not the other elements of these listings. Pl.'s Mem. [DE-27] at 15-16. Accordingly, Claimant has not demonstrated he was prejudiced at step two by the ALJ's failure to address each of Dr. Cohen's findings with respect to ambulation prejudiced and this assertion of error lacks merit.

Claimant also argues that the ALJ's failure to fully credit Dr. Cohen's and Dr. Moorman's opinions regarding Claimant's ability to ambulate effectively is material because "a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly." Pl.'s Mem. [DE-27] at 15-16 (quoting S.S.R. 96-8p). Dr. Cohen's conclusion that Claimant could "sit, stand and ambulate," but that he required a cane particularly "for long walks" and Dr. Cohen's findings regarding walking on uneven surfaces and climbing steps do not suggest that Claimant could only stand or walk for a few minutes during the workday. (R. 587). And as discussed above, the ALJ appropriately rejected the extreme limitations in Dr. Moorman's opinion.

Accordingly, the ALJ applied the correct legal standards in evaluating Dr. Cohen's and Dr. Moorman's opinions and substantial evidence supports the weights afforded these opinions.

### ii. Credibility

Finally, Claimant takes issue with the ALJ's credibility analysis. (R. 21-22). When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective

20

complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at \*2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at \*2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at \*3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at \*2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at \*4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Claimant specifically argues that two of the ALJ's findings related to credibility are in error: (1) that Claimant's daily activities of driving, reading, watching television, socializing with friends

21

and relatives, and caring for his personal needs demonstrate he is not disabled when these are undemanding tasks that do not reflect on Claimant's ability to stand or walk for two hours in an eight-hour workday, and (2) that Claimant's inconsistent statements about his level of education, 9th grade as opposed to 11th grade, suggest he may not be reliable when this has nothing to do with Claimant's pain or other symptoms. Pl.'s Mem. [DE-27] at 13-14. Even assuming these considerations were not appropriate or persuasive, the ALJ further relied on that fact that Claimant's conservative treatment did not substantiate the severity of his complaints. (R. 21-22); *See Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. 2015) (unpublished) (4th Cir. June 1, 2015) (unpublished) (finding it "well established in this circuit that the ALJ can consider the conservative nature of a claimant's treatment in making a credibility determination," and explaining "if all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."). As detailed above, Claimant's medical records bear out that after Claimant's successful post-accident hip and pelvic surgery and successful post-fall knee surgery, Claimant received conservative treatment that was generally successful in addressing his symptoms, and there is no evidence the severe limitations on his ability to ambulate effectively persisted. *See, e.g.*, (R. 702, 704, 738, 765, 756-58, 762-64, 777, 780, 782, 785, 788, 813, 818, 821, 827-29); *see also Tomassetti v. Astrue*, No. 7:11-CV-88-D, 2012 WL 4321646, at *11 (E.D.N.C. Aug. 22, 2012) (unpublished) (determining that even if the ALJ erred in finding that the claimant had not been prescribed narcotic pain medication in the credibility analysis, "the contrary finding by the ALJ would constitute harmless error and her credibility determination would remain supported by substantial evidence in light of the numerous other factors and large body of medical records and other evidence upon which she based her determination."), *adopted by* 2012 WL 4321632 (Sept. 20,

22

2012). "Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Barnes v. Colvin*, No. 5:12-CV-696-D, 2013 WL 6985182, at *13 (E.D.N.C. Nov. 13, 2013) (unpublished) (quoting *Austin v. Astrue*, No. 7:06-CV-622, 2007 WL 3070601, at *6 (W.D. Va. 2007) (unpublished) (internal citation omitted)), *adopted by* 2014 WL 126059 (Jan. 13, 2014). Accordingly, there is substantial evidence in the record to support the ALJ's credibility determination and the ALJ appropriately exercised her discretion in discounting Claimant's testimony regarding the severity of his limitations.

In sum, the ALJ thoroughly discussed and properly evaluated the evidence of record, including the medical records, opinion evidence, and Claimant's testimony with respect to his impairments, and "has provided the court with a sufficiently drafted decision to review for substantial evidence." *Hitchcock v. Colvin*, No. 4:14-CV-154-FL, 2015 WL 5725672, at *4 (E.D.N.C. Sept. 30, 2015) (unpublished). This distinguishes the instant case from *Mascio*, where the court found the ALJ's RFC determination was "sorely lacking in the analysis needed" to conduct a meaningful review of the ALJ's conclusions. 780 F.3d at 636. The ALJ's RFC determination is supported by substantial evidence in the record, and the decision of the Commissioner should be affirmed.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-26] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-31] be ALLOWED, and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 15, 2016** to file

23

written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

SUBMITTED, this the 1st day of February 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

24